GAJARSA, Circuit Judge,
coneurringin-part.
I agree with the majority that the asserted claims of U.S. Patent Nos. 7,217,286 (the “'7286 patent”); 7,223,286; 7,229,473 (collectively, the “1997 patents”); and 7,300,662 (the “'662 patent”) are invalid, but would hold the 1997 patents invalid for lack of enablement. Therefore, I concur only in judgment as to the 1997 patents. I join fully the majority’s opinion regarding the '662 patent.
The claimed invention is a combination of a stent, polymeric carrier, and therapeutic agent. The majority focuses solely on the written description aspect of whether the therapeutic agent’s analogs were adequately described and ignores that in nearly all of the asserted claims, the agents must effectively inhibit neointimal proliferation. Because undue experimentation was required to practice the 1997 patents, the district court’s grant of summary judgment of invalidity should have been affirmed on enablement grounds.
The enablement requirement of 35 U.S.C. § 112 ¶ 1 is the appropriate tool for invalidating claims that are broader than their disclosure. The majority blurs the line between enablement and written description and does not address the claim language that “rapamycin, or a macrocyclic lactone analog thereof, and is present in an amount effective to inhibit neointimal proliferation.'7286 patent, col.8 11.15-23 (emphasis added).
The majority’s opinion further extends the written description requirement into the realm of enablement. Much of the confusion in this case is due to the difficulty of determining what constitutes a genus or a subgenus, the relationship between the structure and the function of compounds, and how the written description requirement applies to novel compounds as opposed to novel combinations of known elements. These are legal inquiries predicated on disputed issues of material fact. Applying the enablement requirement would help to clear the thicket of jurisprudence regarding § 112 ¶ 1. As discussed briefly below, in this case, the enablement analysis is simpler and more appropriate.
The relevant test for enablement is whether the specification enables one of skill in the art to practice the claimed invention without undue experimentation. In re Wands lists the factors to be considered in determining whether a disclosure would require undue experimentation. 858 F.2d 731, 737 (Fed.Cir.1988). The district court correctly applied the Wands *1370 factors and held that practicing the claimed invention with a macrocyclic lac-tone analog would have required undue experimentation in 1997. The district court noted that “there is no direction or guidance disclosed in the patents and no working examples” (factors 2 and 3); “the claims are moderately broad insofar as there is no limit, aside from function (determined through experimentation), regarding the number of potential analogs” (factor 8); “there is no genuine dispute that the invention concerns a very complex chemical and biomechanical art germane to highly skilled cardiologists” (factors 4 and 6); “the 1997 patents were filed on the heels of a decade marked by failed attempts to reduce restenosis” (factor 5); and “the chemical arts have long been acknowledged to be unpredictable” (factor 7). Boston Scientific v. Johnson & Johnson, 679 F.Supp.2d 539, 557 (D.Del.2010). These findings were consistent with Appellants’ opposition to Appellees’ § 103 motion. The Appellants argued that “the development of the Cypher stent required trial-and-error experimentation with many drugs and polymers.” J.A. 17718.
To satisfy a majority of the asserted claims, a rapamycin analog not only needs to generally prevent restenosis, but must also prevent restenosis when used on a drug-eluting stent. Once rapamycin’s structure was known, scientists could hypothesize that useful analogs could potentially be created by changing parts of that molecule, particularly outside of the critical macrocyclic ring structure. The 1997 patents did not need to explain how to synthesize, identify, or determine the biological activity of a suitable macrocyclic lactone analog. The patents did, however, need to disclose where the rapamycin molecule should be modified to obtain a suitable analog with the desired efficacy in stents. It is not enough that a person of ordinary skill in 1997 could have readily determined whether a compound was a claimed macrocyclic lactone; for most of the claims, the analog needed to prevent restenosis when used on a drug eluting stent. Because no one knew of any rapamycin analogs with the desired efficacy when delivered by stents as of the filing date of the 1997 patents, Appellants’ claims are not enabled.
The claims of the 1997 patents are invalid for lack of enablement but because the majority decided that the asserted claims were invalid solely for lack of written description, I concur only in the judgment as to those patents.